UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-1  RICHARD ROGERS

      Defendant.
_____/

CRIM. CASE NO. 13-20270

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## ORDER DENYING DEFENDANT ROGERS' MOTION TO SUPPRESS (1) POST ARREST STATEMENT TO TASK FORCE OFFICERS, AND (2) EVIDENCE SEIZED PURSUANT TO WARRANTLESS CONSENT SEARCH OF HARDING RESIDENCE

On December 13, 2012, Defendant Rogers, driving a silver Pontiac Grand Prix, was stopped for a traffic violation by FBI-Detroit Police Department Task Force Officers in Detroit, Michigan. Rogers did not have a valid license, and admitted to having "weed" (marijuana) in his possession. At that point, Rogers was arrested. Shortly thereafter, still on the street site, he admitted to having possession of cocaine in the car. He was then removed from the neighborhood and taken in a police car to a close-by strip mall parking lot on a main street because "it appeared through the brief conversation that he may want to cooperate." (Tr. Vol. 2, Motion to Suppress, Nov. 5, 2013, T.F.A. Richardson, pp. 56-57).

At that strip mall location, Rogers was given oral Miranda warnings and questioned. Specifically, TFA Richardson and Sgt. Myron Weathers verbally gave Rogers his Miranda warnings: they did not have a Miranda warning form in their possession. They asked Rogers if

1

he would consent to a search of his Harding residence. (Nov. 1, 2013 Hearing, Weathers, pp. 22-23). Thereafter TFA Richardson saw Sergeant Weathers provide Rogers with a consent form (Gov't Exh. 15), that permitted the police to search the house at 2187 Harding. (Nov. 1, 2013, Tr. P.27) Rogers read and signed the form.

TFA Richardson further testified that TF members then proceeded, with Defendant Rogers in tow, to the Harding Street residence, which they entered using the key that Defendant Rogers had provided them. (Anderson, Nov. 5, 2013, Tr. P.64).

The TF agents first secured the house, and then brought Defendant Rogers inside. *Id.* 65. TFA Richardson testified that by that time, they had obtained both an FBI advice of rights form, and a statement form from the Detroit Police Department. (Hearing, Vol.2, Nov. 5, 2013, Richardson, Tr. p.70).

The TF Agents then interviewed Defendant Rogers. Rogers signed the statement form (Gov't Exh 17, executed November 13, 2013) Nov. 5, 2013 Tr. P.70. Thereafter, TFA Richardson and Gavel asked Rogers questions and Gavel wrote down his answers. (Gov't Exh. 16). Nov. 5, 2013 Tr. P.72. At the end of the search, TFA Lucas filled out a form FO-597 that listed the items seized in the search and provided a copy to Mr. Rogers. (Gov't Exh. 21) Lucas Testimony 11-13-12, Hearing p.78.

In the Rogers statement at the house, he was asked whether he had any narcotics when he was initially stopped by the police, and he responded "yes." TFA Richardson, Nov. 2013 Tr. P. 76. Although law enforcement did not ask Defendant Rogers whether he had recently ingested any drugs or alcohol and was then under the influence, this absence does not undermine the Court's conclusion that he knowingly and voluntarily made his statement at the house based on

2

the TFA's visual assessment as well as Rogers' answers to the agent's questions leading them to conclude, through "observation, that Mr. Rogers did not appear to be under alcohol or narcotics." TFA Richardson, Nov. 5, 2013 Tr. P. 78.

The Court concludes that based on the evidence presented at the hearing that Rogers' statement was made knowingly and voluntarily. Rogers' original in-car statement made at the strip mall, after receiving oral Miranda warnings was knowingly and voluntarily made.

TFA Richardson testified that he saw a controlled buy of narcotics in November 2012, out on the street that led to Mr. Rogers, who then went from selling the drugs to the 2187 Harding address. TFA Richardson, Nov. 5, 2013 Tr. Pp.87, 96.

TFA Richardson further testified that after the 2012 controlled purchase at 2187 Harding, he learned that Ms. Sanja Brewer lived there, and her Pontiac Grand Prix was registered to that address. TFA Richardson, Nov. 5, 2013 Tr. P. 93. A 2012 buy based upon a CI's tip – the same CI as in the instant case, led to the identification of Mr. Rogers as a resident at 2187 Harding. That same CI tipped off the Task Force that there would be a drug delivery that day in the Harding neighborhood. O'Brien argument, Nov. 5, 2013 TR p. 109. The Task Force posted surveillance in the neighborhood, saw the Silver Pontiac Grand Prix leave 2187 Harding, commit traffic violations, stopped the car and arrested Rogers for possession of marijuana and cocaine. The stop was proper under *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The car search was valid under *Thornton v. United States*, 124 S.Ct. 2127 (2004). Defendant's statements, which came after receiving his warnings, were valid under *Miranda v. Arizona*, 384 U.S. 436 (1966). Rogers' consent to search were valid under *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

Accordingly, there was probable cause to arrest Rogers, his statements – at the arrest and at the Harding address were knowing and voluntary, as was the consent to search the Harding address. Defendant's Motion is DENIED.

SO ORDERED.

DATED: FEB 1 9 2014

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE